**Certiorari Denied, May 11, 2011, No. 32,963**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-066**

**Filing Date: March 21, 2011**

**Docket No. 29,524**

**CLARA ROMERO,**

      **Plaintiff-Appellant,**

**v.**

**BOARD OF COUNTY COMMISSIONERS**
**OF COUNTY OF TAOS, and the**
**NEW MEXICO ASSOCIATION**
**OF COUNTIES,**

      **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Sam B. Sanchez, District Judge**

The Herrera Firm, P.C.
Samuel M. Herrera
Taos, NM

for Appellant

Slease & Martinez, P.A.
William D. Slease
Jonlyn M. Martinez
Albuquerque, NM

for Appellees

**OPINION**

**WECHSLER, Judge.**

**{1}** We address in this appeal whether the requirements of NMSA 1978, Section 66-5-

1

301(A) (1983), pertaining to uninsured and underinsured motorist (UM/UIM) coverage, apply to a group of counties that pool their financial resources under NMSA 1978, Section 3-62-1 (1986) and NMSA 1978, Section 3-62-2 (1986) to satisfy claims against the individual counties of the group. We hold that Section 66-5-301(A) does not apply and affirm the district court's grant of summary judgment.

**BACKGROUND**

{2}     Plaintiff Clara Romero, an employee of Defendant Taos County (the County), was injured in a motor vehicle accident while she was driving a vehicle belonging to the County in the course of her employment. She was struck by another vehicle and was not at fault. Plaintiff received a settlement for the policy limits of the insurance policy of the driver of the other vehicle. She also received workers' compensation benefits. Plaintiff made a claim for UM/UIM coverage against the County's insurance coverage.

{3}     The County provided coverage for its losses through a coverage agreement with Defendant New Mexico Association of Counties (the Association of Counties). Through the Association of Counties, member counties pool contributions to a fund (the multi-line fund or pool) to provide coverage for property and liability losses. The coverage agreement specified the coverage provided by the Association of Counties through the multi-line pool. The coverage agreement did not include UM/UIM coverage.

{4}     Plaintiff filed a declaratory judgment action against the County and the Association of Counties, requesting in part a determination that, based on Section 66-5-301(A), the County had coverage for, and the Association of Counties was obligated to pay, UM/UIM benefits to Plaintiff. Defendants filed a motion for summary judgment, arguing that the County did not have UM/UIM insurance and that the Association of Counties was immune from suit. Plaintiff filed a counter-motion, contending in part that Section 66-5-301(A) and public policy required the Association of Counties to provide UM/UIM coverage, and the County did not waive such coverage. The district court denied Plaintiff's motion and granted Defendants' motion. It stated that the County was neither obligated to purchase nor could it purchase UM/UIM coverage to compensate Plaintiff for her injuries. Plaintiff appeals from the district court's order.

**APPLICATION OF SECTION 66-5-301(A) TO THE ASSOCIATION OF COUNTIES**

{5}     Plaintiff contends that the district court erred in granting Defendants' motion for summary judgment and in denying her motion. We review the district court's grant of a motion for summary judgment de novo to determine whether the district court was correct that there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law. *Tafoya v. Rael*, 2008-NMSC-057, ¶ 11, 145 N.M. 4, 193 P.3d 551.

{6}     Plaintiff states that the issue in this case is whether the Association of Counties is

2

obligated to offer UM/UIM coverage to the County and, if so, whether the County waived UM/UIM coverage. She argues that the law of New Mexico, as stated in Section 66-5-301(A), requires an insurance provider to offer UM/UIM coverage in all automobile insurance policies unless the named insured rejects such coverage. Thus, Plaintiff concludes that because the County did not reject UM/UIM coverage, the County had such coverage as a result of its coverage agreement with the Association of Counties.

{7}    Plaintiff is correct that Section 66-5-301(A) generally requires an insurer to provide UM/UIM coverage as part of an automobile liability insurance policy unless rejected by the insured. *See Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 156, 803 P.2d 243, 245 (1990) (stating that public policy embodies making uninsured motorist overage part of automobile liability insurance policies and that an insured may reject such coverage). We therefore agree with Plaintiff that our focus should be on whether Section 66-5-301 applies to the Association of Counties. Plaintiff made this argument to the district court, and, although the district court did not expressly rule on this issue, we can affirm if the district court was correct for any reason that was before it on the basis of the presentations of the parties. *See Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154 (noting that an appellate court may "affirm a district court ruling on a ground not relied upon by the district court, but will not do so if reliance on the new ground would be unfair to appellant" (alteration, internal quotation marks, and citation omitted)).

{8}    We view the matter as one of legislative intent. *See Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 15, 149 N.M.162, 245 P.3d 1214 (stating that the "primary goal when interpreting statutes is to further legislative intent"). To ascertain legislative intent, we look to the words used by the Legislature in the statutes at issue as "the primary indicator of legislative intent." *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (internal quotation marks and citation omitted). We seek to harmonize our reading of the relevant statutes to give effect to each of them. *See State v. Davis*, 2003-NMSC-022, ¶ 12, 134 N.M. 172, 74 P.3d 1064 ("All of the provisions of a statute, together with other statutes in pari materia, must be read together to ascertain legislative intent."). We interpret the UM/UIM statute liberally to implement its remedial purpose. *Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 14, 147 N.M. 678, 228 P.3d 462.

{9}    The statutes relevant to our analysis are Section 66-5-301(A), Section 3-62-1, Section 3-62-2(A), and NMSA 1978, Section 66-5-207(A) (1998). Section 66-5-301(A) requires automobile liability insurance policies to provide UM/UIM coverage and reads, in relevant part:

> No motor vehicle or automobile liability policy insuring against loss . . . shall be delivered or issued for delivery in New Mexico with respect to any motor vehicle registered or principally garaged in New Mexico unless coverage is provided . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured

3

motor vehicles . . . , according to the rules and regulations promulgated by, and under provisions filed with and approved by, the superintendent of insurance.

Sections 3-62-1 and 3-62-2(A) address the manner in which public bodies, including counties, may provide for their insurance needs. Section 3-62-1 permits New Mexico counties to self-insure through self-insurance reserves as an alternative to, or in combination with, insurance secured by "any other method provided by law." Section 3-62-2(A) permits two or more counties to pool their self-insured reserves, claims, or losses. Section 3-62-2(A) provides that such pooling "shall not be construed to be transacting insurance or otherwise subject to the provisions of the laws of this state regulating insurance or insurance companies." Section 66-5-207(A) exempts a motor vehicle owned by a political subdivision of a state, such as the County, from the Mandatory Financial Responsibility Act (MFRA), NMSA 1978, Sections 66-5-201 to -239 (1978, as amended through 2003).

**{10}** Sections 3-62-1 and 3-62-2(A) are inconsistent with Plaintiff's position that Section 66-5-301(A) requires the Association of Counties to provide the County UM/UIM coverage. The Association of Counties provides the mechanism by which its member counties self-insure through their pooled reserves. The Legislature recognized that this type of self-insurance coverage afforded by the Association of Counties is not the same as other liability insurance by exempting it from state laws that regulate insurance and insurance companies. Section 3-62-2(A). In the general sense, Section 66-5-301(A) is such a law because it regulates the terms of a motor vehicle or automobile liability policy by requiring insurance companies to provide UM/UIM coverage. With this reading of Section 66-5-301(A), the Association of Counties has no obligation to provide UM/UIM coverage to its self-insuring members.

**{11}** We acknowledge that the Legislature's use of the word "regulating" with respect to laws regulating insurance and insurance companies may be ambiguous in that it might arguably only refer on its face to laws establishing administrative regulation. However, when we read Section 66-5-301(A) not only in conjunction with Sections 3-62-1 and 3-62-2(A) but also with the provisions of the MFRA, the legislative intent is clear that Section 66-5-301(A) does not apply to the Association of Counties coverage. *See Dewitt v. Rent-A-Ctr., Inc.*, 2009-NMSC-032, ¶ 29, 146 N.M. 453, 212 P.3d 341 (stating that to the extent statutory language is ambiguous, courts can consider principles of statutory construction to ascertain legislative intent).

**{12}** The purpose of the MFRA "is to require residents of New Mexico who own and operate motor vehicles upon the highways of the state either to have the ability to respond in damages to accidents arising out of the use and operation of a motor vehicle or to obtain a motor vehicle insurance policy." Section 66-5-201.1. The MFRA requires motor vehicle owners to have insurance in specified minimum amounts or evidence of financial responsibility in specified minimum amounts to permit anyone to operate a motor vehicle on the streets or highways of the state. Sections 66-5-205(A), -208, and -215(A). It

4

specifically exempts motor vehicles owned by "any state or any political subdivision of a state." Section 66-5-207(A). The County is a political subdivision of the state of New Mexico. *El Dorado at Santa Fe, Inc. v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 89 N.M. 313, 317, 551 P.2d 1360, 1364 (1976) ("A county is but a political subdivision of the [s]tate, and it possesses only such powers as are expressly granted to it by the Legislature, together with those necessarily implied to implement those express powers.").

**{13}** By virtue of its exemption from the MFRA, the County is not required to purchase motor vehicle liability insurance or have evidence of financial responsibility in order to permit its vehicles to operate on New Mexico roads. Because the Legislature exempted the County from any obligation to purchase any motor vehicle liability insurance, the Legislature certainly did not intend that the County have any obligation to acquire UM/UIM coverage.

**{14}** This conclusion, however, does not fully address Plaintiff's argument because Section 66-5-301(A) places the burden on the insurance provider to include UM/UIM coverage and, arguably, even though the County as the recipient of the coverage had no obligation to obtain UM/UIM coverage, the Association of Counties still had the obligation to provide it. To be sure, Section 66-5-301(A) does not contain an exemption for insurance policies issued to political subdivisions of the state. Nevertheless, when we construe Section 66-5-301(A) in connection with the MFRA, the County's exemption under the MFRA indicates that the Legislature did not intend the Association of Counties to have any obligation under Section 66-5-301(A) to offer UM/UIM coverage to the County.

**{15}** "The rule that statutes in pari materia should be construed together has the greatest probative force in the case of statutes relating to the same subject matter passed at the same session of the Legislature." *Davis*, 2003-NMSC-022, ¶ 12. Even though Section 66-5-301(A) is not part of the MFRA, both the MFRA and Section 66-5-301(A) were originally enacted in 1978 and address required motor vehicle liability insurance. Both are designed to protect persons who are injured in motor vehicle accidents. The MFRA requires insurance or evidence of financial responsibility for motor vehicle owners and drivers so that they will be able to respond in damages to those injured in motor vehicle accidents. Sections 66-5-201.1, -205. Section 66-5-301(A) further fulfills the MFRA purpose by requiring insurance coverage for uninsured and underinsured motorists unless the insured rejects such coverage.

**{16}** When we read these statutes together, we believe that the Legislature intended the requirement of Section 66-5-301(A) to apply to the insurance required under Section 66-5-205. Indeed, Section 66-5-301(A), in stating the necessary UM/UIM coverage, specifically references the minimum limits of the MFRA. Thus, Section 66-5-301(A) does not specifically exempt the County because it need not do so. The Legislature focused on the actions of the insurance provider in Section 66-5-301(A), not on those of the insured. Because the County was exempt from the MFRA requirements, even if the Association of Counties was an insurance provider under Section 66-5-301(A), an issue we do not decide, it was not required to offer the County UM/UIM coverage.

5

**{17}** Contrary to our conclusion, Plaintiff makes the additional argument that public policy requires the Association of Counties to provide UM/UIM coverage. As a general matter, the public policy stated in Section 66-5-301(A) is "to make uninsured motorist coverage a part of every automobile liability insurance policy issued in this state, with certain limited exceptions." *Romero*, 111 N.M. at 156, 803 P.2d at 245. Indeed, Section 66-5-301(A) was "intended to expand insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists." *Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, ¶ 5, 149 N.M. 157, 245 P.3d 1209 (internal quotation marks and citation omitted). However, the Legislature stated in Section 66-5-301(A) that there were limited exceptions to the required coverage, and it set forth countervailing public policy with respect to governmental entities in the MFRA and Sections 3-62-1 and 3-62-2(A). In the context of this case, involving a political subdivision of the state, the Legislature did not intend the general policy of Section 66-5-301(A) to apply.

## CONCLUSION

**{18}** Section 66-5-301(A) does not require the Association of Counties to provide UM/UIM coverage to the County. We affirm the district court's grant of summary judgment to Defendants.

**{19}   IT IS SO ORDERED.**

---

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

---

**MICHAEL E. VIGIL, Judge**

---

**LINDA M. VANZI, Judge**

**Topic Index for *Romero v. Bd. of Cnty. Comm'rs of Taos Cnty.*, Docket No. 29,524**

| **AS** | **ASSOCIATIONS AND SOCIETIES** |
|---|---|
| AS-AG | Associations, General |

| **CP** | **CIVIL PROCEDURE** |
|---|---|
| CP-SJ | Summary Judgment |

| **GV** | **GOVERNMENT** |
|---|---|
| GV-CU | Counties |

**IN**            **INSURANCE**
IN-UM       Uninsured or Underinsured Motorist

**ST**            **STATUTES**
ST-IP        Interpretation
ST-LI        Legislative Intent
ST-RC       Rules of Construction